Our first case for today is 2018-20729 United States v. Eric Beverly. You may proceed. May I please accord? Good morning. Amy Alanis for the United States. The issue in this case is whether Judge Hughes erroneously declined to apply the good faith exception to cell site location information that was lawfully obtained back in 2015 by an 18 U.S.C. Section 2703D order. That was some three years before the Supreme Court handed down Carpenter, which of course held that to obtain such information, the government must have a search warrant. But the district court was ultimately vindicated by the Supreme Court in Carpenter from the previous rulings of the district court. He was, and of course that issue had been before this court before, and he was right about that. We were wrong, and he was right. I don't know that you all were wrong. I think the Supreme Court took a big leap into the future in dealing with new technology in Carpenter. I wasn't on the court at the time, so I'm not going to lie. You're blameless. Okay. Nevertheless, the good faith exception should apply here because the officers acted in objectively reasonable reliance on four different things that courts have developed over the years. First of all, they relied on the statute, the Historic Communications Act, which is 18 U.S.C. 2703D. They also relied on binding appellate precedent from this court, which is the case we've referred to, what's called in-ray application, which was handed down back in 2013. And there have been many other circuit courts of appeal that have also upheld the constitutionality of that law. Including Carpenter itself, right? Yes. Raymond, Carpenter II? Correct. Correct. Thirdly, they relied on the magistrate's 2703D order. And finally, they relied on the Supreme Court's third-party doctrine, particularly as developed in the cases called Miller and Smith. Smith was probably the most analogous to this case because it was about numbers that are dialed from a phone. I have a couple of factual questions, which maybe you could clear up. Is there an issue with regard to Davis' phone? It was unclear to me in the briefing, and I don't understand if that was actually argued, something about Davis' phone, and if so, how would Mr. Beverly have standing to argue about Davis' phone? Or is that not part of this case? I don't really think it is. Here is why I dropped just a brief footnote about this. In one of his ... He filed several motions to suppress, and in one of them, he did say he wanted to suppress Davis' information as well. Now, it wasn't discussed at the suppression hearing. There is nothing in Judge Hughes' order about Davis or his information. I don't think it's really here. You relied upon ... You don't believe the court made a ruling about Davis' phone? I do not. There is nothing in the order. And Davis' phone itself had the number for Beverly. Yes, it did. And of course, we're talking about two different sets of information from the phone here. There's a subscriber information, which is just the name on the account and the address where the bill is sent. And then secondly, it's the toll records, which are just the numbers called from that phone. And none of that information gives any type of location information. Your position would be Carpenter has nothing to do with that information. Exactly. In fact, in Carpenter, the court was very careful to note that it was a narrow decision, and it just applies to records of your physical movements, and toll records, subscriber info has none of that. Could you add a second factual question that I have? Sure. It has to do with ... Was there a difference between what was presented to, I think it was Judge Johnson, and then what was presented to Judge Stacy? Or was it exactly the same thing, and they just ruled differently? I went back and I pulled both of those applications. The only thing that is different about the search warrant is that they added a co-defendant statement that basically what happens is they find Jeremy Davis. He leaves his palm print in one of the banks. They trace the print to him. They go and talk to him. At first, of course, he says, well, I don't know anything about this, but when they start talking to him about the fingerprint, he says, okay. I did it, and these people did it with me, and he names Beverly, and he names a third guy named Babers. There was an additional support, there was additional support, the co-defendant. Yes. Yes. It would have changed. It's not just going, well, this person's on criminal duty this week, and we're going to try again next week. That's not ... Oh, no. Not at all. They had probable ... Really, they had probable cause back in 2015. They could have gotten search warrant, but they didn't because they didn't have to. I'm sorry. That's the question. What was the basis for, do we know why they waited? To get a search warrant? If you say they could have done it back then, why did they wait? I don't think that there's anything you can impugn necessarily for them waiting, but why did they wait? Well, they simply did not realize that they needed a search warrant. They knew that at that time, it was understood by the law enforcement community and everyone that if you wanted this type of cell phone information, you went, you got a 2703D order from a magistrate judge, and that is exactly what they did. In the Supreme Court, in the Carpenter case, didn't the Supreme Court not identify other parts of the, what is the law called, the SCA? Stored communications. The Stored Communications Act that do require a warrant. Yes. Not this one. But not this one. And we had, we had, I don't remember when our president came out on this question. What year? It was 2013. Okay. When you upheld the constitutionality of 2703D. Can I ask you another factual question? I just wanted to clarify, in 2015, the government sought a 2703D order with respect to certain CSLI, certain time frame. When the government sought the warrant right after Carpenter was decided in 2018, maybe the same day, the government asked for more, is that correct? They did. I believe the dates are a little bit different, but they didn't, we didn't get anything new. Well see, so that's, I guess that's my question. You had certain information from the 2703 warrant, 2015, and I understand your argument with respect to that is a, look, we had a good faith reliance on a statute that had been upheld by this circuit, and that should be okay under a good faith exception, right? Correct. I think of that as the Krull exception. Yes. From the Supreme Court. Exactly. But there's more information that's asked for in the 2018 warrant, in other words, it's a larger date range, so like 150-something days more of CLSI. So that couldn't come in under the good faith exception, we have to, we have to do a different analysis for that. Am I right, or do you disagree? I don't think so, because all of, I think what happened was they, they got the order for a certain amount of time, and some of the, actually, I think it was Beverly and one other guy, their data went back a little bit further, and they got all that with the first order. So you're saying they had all the, I mean, we can check in the record, but you're saying they had all of the information covered by the 2018 warrant already, there wasn't any additional information? That is my understanding from the trial that you were saying to us. You didn't acknowledge that in the request for the subpoena, that you had already obtained that information. I think that's what aggravated at least one of the judges. I'm sorry, say again. You didn't acknowledge that you had already obtained a significant amount. It does not say that on the four corners of that affidavit, and the argument was, my trial prosecutor said, well, we thought about putting it in, but we didn't want to influence this new judge by saying, well, but we already got an order for this. And there's also, she also said at the hearing that, this is not admittedly in the four corners, but one of the agents said, Judge, we're having to get this again because of the carpenter, and she said something like, well, that's a good idea. It was a separate, it was a different judge that had done the first one. Did that answer your question? Well, sort of, but I guess, but that would have been pertinent information that should have been shared in retrospect, correct? You agree with that? I don't think it is pertinent. You don't think it's pertinent that you already had the information that you're seeking in the warrant? That seems to me very pertinent. Well, I don't think the probable cause depends on whether you had it before or didn't have it before. Well, you don't really have a cause, I mean, you could argue, perhaps, that you don't really have any need for the information if you already have the information. And so, there's not really a basis to get the information again. Now, I understand why you would want to get the information in this format that you know is . . . doesn't have the issue that you have with it in the prior version of it, but that is pertinent to whether the judge is going to let you get the information again. Well, again, Judge, I think there was a need. We had Carpenter handed down that day. They had a very eminent trial setting. They were very worried that Judge Hughes would not apply the good faith exception. And so, the district court would not apply the . . . I'm sorry. Now, you say that you did need it, but now you're taking the position that you already had it and that it was obtained properly, so we should reverse the judge for saying that you . . . Our main argument . . . . . . could have obtained it. I'm sorry. I just want you to be consistent because you're arguing that what you did was fine. I think it was fine, but our main argument, we're not seeking to . . . we're not seeking to recover what we got from the search warrant because it's the same thing that we got back in 2015, which is admissible under the good faith exception. Okay. Well, I really didn't think that you would argue that you shouldn't have . . . that that prosecutor shouldn't have revealed that information. I thought you would say, yes, of course, Judge, that in retrospect, that should be conceded or disclosed because that is pertinent. This is troubling to me that you think that it's okay to hide that information from the magistrate issuing the warrant. Well, it was not hidden from her. It was expressed to her at the meeting that the agents had with her, but I don't think pertinent is the standard upon which a search warrant is issued. It's probable cause. Do you have probable cause to believe that the offense occurred, this person is involved, and this evidence you want relates to that? No, but you're supposed to disclose the relevant information to the court so that it can make a learned decision. Well, again, Your Honor, I guess we disagree. I think probable cause was present, and I've made that . . . Well, that's not the issue. The issue is whether or not you're disclosing all the things that you need to disclose. It seems that it's not a good practice to hide information in the warrant. I will agree that that . . . Okay. That's . . . It probably should have been done, but it doesn't . . . That's what's so hard about that. Oh, I'm sorry, Your Honor. I didn't mean to be stubborn, but it just . . . we still have probable cause. I think I made that argument. Okay. Well, if the official order and the warrant-authorized search largely overlap, even if we were to agree that the information from January 24th to May 5th should be suppressed, what difference does it make? It makes none. So why are we having this discussion at all? Well, I'm not sure, because we're not really trying to get the search warrant part reversed. We're just saying we're relying on the order here today. That's what my brief was all about. Good faith exception should have applied. You know, the trial prosecutors panicked a bit. Look, I think we're here today because the district court's order called you all sorts of names. Well, that . . . Like, you meretriciously applied for a search warrant. You know, it's pretty strong stuff. It is. Agreed. And what teed them off, evidently, was you didn't reveal in the application . . . Yes. . . . that you already had it pursuant to a 2703 order. I mean, that's why we're here. The question is, is that correct under whatever the standard of review is? Is it a use of discretion to find that you meretriciously applied for a search warrant? Very nice. I mean, I think that's why we're here. I mean, look, it's conceivable to me that the government could have taken the position, look, Carpenter, great. You know, now we know the law, but we already had the information under a 2703 order. We don't need to apply for a search warrant. I imagine the government could have taken that position. Maybe a risky position. I mean, you're saying, who knows how the district court would react to that? Correct. And that was why they decided to get the search warrant. And it may not have been done perfectly, but nevertheless, probable cause is in that affidavit. Well . . . And certainly, the magistrate judge knew that it had already been obtained and that we were here because of Carpenter. And with respect, you mentioned that perhaps you might have had some doubts. I don't know if you said this. You'll correct me if I'm wrong. You might have had some doubts about the district court's willingness to apply the good faith exception. Correct. Okay. So I notice in the district court's order that he says at the end of his order, use of the good faith exception would mean, in essence, that a statute found unconstitutional still applies in every pending case except the one that happened to announce the new rule. And he drops a footnote to Davis v. United States, but to the dissent. Correct. He cites the dissent. And the last sentence before, he cites the dissent in Krall. So . . . Correct. I don't know what that means. I'm not sure either. I pull those out and basically, you know, both of those cases are extensions of the Katz rule. And so there was just, you know, Krall said you can rely on a statute that's later invalidated. Davis says you can rely on appellate precedent. In that case, it was Belton. I mean, we don't have the liberty of relying on the dissents in cases. No, that's not binding precedent. We have to rely on the majority. And normally, that does happen in all sorts of circumstances that a new rule is announced and that if it's not retroactive, and it's presumed not be retroactive normally, and so that's not . . . while it may seem harsh to those who are similarly situated, that's the way it works in habeas and all other . . . lots of constitutional issues. Yes. It didn't work for Mr. Carpenter either. The Sixth Circuit found that the good faith exception applied because the FBI agents in that case were relying on the law. Was this when they did this, counsel? I'm sorry? Your time is up. Oh, yes, it is. Thank you. Good morning. Good morning. My name is Cornell Williams, and I represent the appellee Eric Beverly. I am also his trial counsel, and I've been present . . . I filed particular motions on behalf of Mr. Beverly. This case simply is here before the Court regarding was there a good faith exception in applying for the actual search warrant. As the Court's aware, Carpenter overruled the set precedent that you could get an administrative warrant to get cell phone records. The date that that was decided, the government decided that they wanted to file a search warrant in order to get the particular information. We were set for trial, I think, some four weeks out, four to six weeks out. I never received the fact that the actual search warrant was filed. It was nowhere in the clerk's office that it was filed. I only learned that they had filed it in speaking to the prosecutor on the case regarding that. They said they had done so in order to try to get the particular records in. Once I discovered that, I filed a motion. I filed a motion to suppress both the cell phone records and the underlying data related to those. We subsequently had a hearing before the Court. My issue in my motion to suppress was it seemed to me that it's very, very important that in the search warrant, you inform the Court we have the information already. It seems to me it would have been very simple to say Carpenter's been ruled upon. I'm sorry. We got the information pursuant to the administrative warrant. Carpenter says we can't do it that way anymore. Now we'd like to get it by search warrant because we're set for trial and we need to know. What does it matter? What does it matter? Because let's say they had it under the—well, we know they had it under the administrative warrant. Carpenter comes out, changed the ballgame. That's correct. Then the government comes in and says, well, now we need a search warrant. Otherwise, that's not going to be admissible. I mean, that was a risk. So what does it matter whether they tell the magistrate, well, we have it already? That doesn't change the—how does that change the analysis under a search warrant? It could have changed the analysis under the search warrant as to the information that the magistrate looks at it. Yeah, but how is that information pertinent to whether a search warrant is going to be granted or not? Well, I think what it does, and I think the Court's ruling is that they're attempting to circumvent what the trial court wants to do. They went to the magistrate. Because the case was pending, they could have filed a search warrant with the judge at that particular time. What does it matter whether it goes to the magistrate or the judge? Because the judge is in the position to know everything about the case. The magistrate only looks at the four corners of the document. But that's a normal protocol in the Southern District. I mean, perhaps we're not—maybe—I don't know if we're allowed to be aware of that, that you go to the magistrate and judge on duty for that month to get any search warrant, that that's a normal protocol. I agree with that. I agree with that. But what's normal in normal cases is not normal here because we have a new case law that just came out. We have a case that's set for trial before a trial court who knows everything that's going on. What difference does it make if it was good faith or not? I mean, if the information is already there and would be admissible at trial anyway. Because the requirements for the search warrant are such that they have to make a good faith effort in terms of attaining the particular information. But you don't need the information from the search warrant because you already have the information. You could just introduce the prior version, which under the prior law was okay. So it's duplicative. But the case has not been decided yet. We aren't at trial yet. We aren't at trial. So because we're not at trial, that evidence doesn't come in unless there's a search warrant. I think the initial evidence definitely doesn't come in. It does not under Carpenter because the Carpenter specifically says you need a search warrant for this information. There was no search warrant for the information. Do you have any circuit case that holds that when information was obtained pursuant to a 2703 order and then Carpenter comes out, that Carpenter retroactively means that that information doesn't come in now? Has any court held that? I do not have any information to that point. However, the law is clear that because the case is pending, it's not retroactive. The case hasn't gone to trial yet. Carpenter is going to apply. Okay. But, right, I'll ask the government. I mean, I think they can see that Carpenter applies. The question is whether the good faith exception under Krull also applies, right? Yes, sir, Your Honor. So when the government got the 2703 order in 2015, do you argue that they somehow acted in bad faith at that time? I have no information to that. Or didn't follow the law at that time? I have no information that's contrary to that. I do not. My particular argument is simple. They got it pursuant to an administrative warrant. Supreme Court says you can't rely upon that again. My case is currently pending. You have to have a search warrant, and that's what the government did. But that search warrant has to be in good faith. It has to include things that would be important to the magistrate to determine if, in fact, it's good faith or not. Let's assume it wasn't in good faith. Yes, sir. Doesn't our case law then allow us to consider whether it would have been supported by probable cause or whether it was supported by probable cause? It does, however. What's your argument? My argument there is that there's bad faith on the part of the government. Probable cause. Probable cause. Because the probable cause is based upon other evidence that was seized after the 2703 warrant was actually issued. Now we've got new information that goes into that. And not only that, they expanded what they asked for in the search warrant from what they had had already from the administrative warrant. Doesn't that support probable cause? Because you don't have that already. So if you ask for a broader universe, then it's not completely overlapping. I think what it supports is the government's effort to circumvent the 2703 because the 2703 would only give them what they asked for at the time. They went to the warrant to get stuff further back than that because they knew they would need that for trial. But now they have another witness that they're attached. Information. They do. They do. They have that information. But that information still does not circumvent the fact as to why they're even issuing the warrant. Are you asking us to create a circuit split here today, sir? I'm asking the court to follow the ruling of the district court. Which would split us from the six. Well, here's my issue with that. We aren't aware as to why they did what they did. We know that they said it, but we aren't in a position to observe as to what they did. We aren't in a position to know if, in fact, there was bad faith in those circuits. We don't know. And so now we're sitting here to say, okay, we're going to follow everybody else, but we have a different set of facts here. We aren't aware of the facts there in terms of if there was even good faith alleged in those particular cases, in those particular circuits. Would you agree that the information, toll records, information that's not location related, would you agree that Carpenter doesn't even apply to that? Well, I think it was narrowly written to not include that. However, I think upon review by the district court, they felt it was bad faith, and because I filed a motion for both, decided to suppress them both. Counsel, do you have anything further that you'd like to bring to our attention? Nothing at this time. Thank you very much. Thank you. If I may respond to a couple of his comments. There's simply no basis in case law for Judge Hughes to have considered anything that happened in 2018 in the application of the good faith exception to the order that was obtained back in 2015. Counsel, several times, it's our custom in protocol that we usually refer to the district court as the district court in argument. There are two courts here. There's the magistrate judge, and then there's the district court. Anything else? I just wanted to point out that he's arguing that somehow the good faith exception doesn't apply because his case is still in the trial phase. Again, there is no basis in the case law to make that distinction. In fact, I've cited a number of cases in my reply brief where federal district courts around the country are already applying the good faith exception in the Carpenter situation in pending criminal cases. I asked the counsel for Mr. Beverly if let's assume for the sake of argument that the district judge, whatever his name was, is correct in saying the government did nothing honestly and meretriciously applied for a search warrant. Let's assume that's true. As I understand our case law, we could still ask whether probable cause supported the 2018 warrant. Do you agree with that? Exactly. That's Leon. Counsel opposite. Yeah, that's right. That's a different strand. Counsel opposite said, well, there's no probable cause. What's your response to the argument that there's no probable cause to support the 2018 warrant? Well, there is probable cause. Right, but be more specific. Again, the sequence of events was they got a hold of Jeremy Davis. He's not a co-defendant in this case, but he's been charged with other robberies. He says, yeah, okay, you got me. I did it with all these guys, including Beverly and another guy named Babers. He told them. He told them a lot about this is how we did it, and these people went in the bank with the guns, and other people were lookouts, and some people were sent in earlier to scout. He told them everything. Not every single one of those details is in the search warrant, but there is enough there to constitute probable cause. What did Davis specifically say about Beverly's participation in the robbery? I'm not sure exactly what it says, but it starts with Davis being caught in the fingerprint, and that basically identified Beverly as one of the people, and they looked at Davis' cell phone information, and they knew that he was speaking to Beverly around the time of these robberies. That was the corroboration of Davis' statements to them. Then, of course, Babers, by 2018, Babers had said, yeah, you're right, you got me, and yes, Mr. Beverly was involved in these offenses as well. I think they included the fact that his cell phone information also said that he was talking to Beverly around the time of the robberies. That is probable cause to believe that Mr. Beverly was involved in these offenses, and that his cell phone data would be relevant. Anything else? No, I will get back the rest of my time. Thank you.